# CHARLESTON.

NEASE v. INSURANCE Co.

*(JUDGE GREEN, absent.)

Submitted January 26, 1889.—Decided March 4, 1889.

1. EQUITY.

A doubtful or partial remedy at law does not exclude the injured party from relief in equity.

2. EQUITY—SHERIFF—JUDGMENT—CREDITORS.

A suit may be maintained in a court of equity by or in the name of the sheriff, under Code 1887, c. 141, s. 15, where there is a conflict between two or more execution-creditors in respect to the same fund or property, and where such suit will avoid a multiplicity of suits.

3. INSURANCE.

Where a policy of fire-insurance provides, that the policy shall be void in any case of a transfer or change of title in the property insured or the foreclosure of a mortgage thereon, the execution of a trust-deed on the property, after the insurance was made, under which no sale had been made at the time of the loss, will not avoid the policy.

4. INSURANCE.

An assignment of a fire-insurance policy subsequent to the loss is valid regardless of the conditions of the policy.

5. INSURANCE—ESTOPPEL.

When the requirements of the policy make it the duty of the insured to submit with the proof of loss a certificate of the nearest magistrate, and a certificate is furnished, to which no objection is made within a reasonable time, the insurer will be estopped from making objections, on the ground that it was not made by the nearest magistrate.

*Tomlinson & Wiley* for appellant.

*Simpson & Howard* and *Gunn & Gibbons* for appellees.

SNYDER, PRESIDENT:

The Ætna Insurance Company, a foreign corporation, in July, 1878, issued a fire insurance policy to C. M. Moore, for $2,000.00. Of this amount $1,000.00 was on the dwell-

---

*On account of illness.

ing-house of said Moore situate on his farm in Mason county, $700.00 on his household furniture and other personal effects in said house, and $300 00 on a piano. By renewals from time to time this policy was continued in force, until after the said property was destroyed by fire as hereinafter stated. In October, 1878, said Moore executed a trust-deed upon the land, on which said house was situated to secure debts due from him, and between that date and the time the fire occurred said Moore executed several other trust-deeds upon said land, and a number of judgments and decrees for money were recovered against him. In the fall of 1885, a suit in equity was brought in the Circuit Court of Mason county by Caroline Long against said Moore and others, to ascertain the liens on the lands of said Moore and to subject the same to the satisfaction of said liens. On Febreary 18, 1886, by a consent-decree entered in said cause the liens and their priorities were fixed, the lands ordered to be sold, and a receiver appointed to take possession of the lands and rent the same until January 1, 1887. The receiver at once took possession of the lands, but Moore continued to occupy and reside in the dwelling-house until after March 19, 1886, on which day the said house and a large portion of the insured property therein were consumed by fire. On the same day, but after the fire occurred, the said Moore assigned his policy and claim for insurance to A. A. Hanly, who in payment thereof drew his check for $1,500.00 on the Ohio Valley Bank at Gallipolis and placed the same in said bank together with an agreement between him and Moore to the effect, that said check was not to be delivered to Moore or paid by the bank, until Hanly should notify the bank, that the Ætna Insurance Company had paid to him the amount of said insurance. On March 22, 1886, four executions were issued from the clerk's office of the Circuit Court of Mason county and placed in the hands of H. G. Nease, the sheriff of said county. These executions were against said Moore and in favor of C. P. T. Moore, the executors of John MacCulloch, deceased, and others. On the same day suggestions were sued out on said executions, two of which were served on said A. A. Hanly as garnishee, and the other two on the Ætna Insurance Company as garnishee.

On May 19, 1886, the said H. G. Nease, as sheriff, suing at the relation and costs of said C. P. T. Moore and the executors of John MacCulloch filed his bill in the Circuit Court of Mason county against said C. M. Moore, the Ætna Insurance Company, the said A. A. Hanly and the other execution-creditors of said C. M. Moore, in which he sets forth the foregoing facts, and charged, that said executions were liens on the said insurance-fund in the order of their respective priorities, either in the hands of said insurance company or of the said A. A. Hanly as the assignee thereof; and praying that an injunction might issue to restrain the payment of said fund to either said C. M. Moore or said Hanly; and that the rights and priorities of the liens of said execution-creditors be ascertained, and that the amount due from said garnishees or either of them be fixed, and the same applied to the payment of said creditors according to their respective rights. An injunction was awarded, and issued according to the prayer of the bill.

The insurance company demurred to said bill and filed its answer thereto, in which it denied that any considerable portion of the household property insured by it was in said house at the time of the fire and destroyed thereby, or that the piano was the property of said Moore. Said answer averred, that by reason of the acts and transactions of the insured the said policy had become forfeited and void according to the provisions contained therein, and that the company was not liable to the said Moore or the plaintiff for any part of said insurance. The prayer is that said policy may be declared void, and all relief denied to the plaintiff.

Depositions and other proofs were taken and filed, the demurrer to the bill overruled, and on February 25, 1888, the cause was heard, and a decree entered therein, by which it was found and decided, that the Ætna Insurance Company was liable on said policy for $1,700.00 with interest thereon from May 20, 1886, that being the whole amount of the insurance less the insurance on the piano; and having ascertained the aggregate of said amount as of the date of the decree to be $1,878.50 the court ordered the insurance company to pay said amount and the costs of this suit to the plaintiff, and referred the cause to a commissioner to report the amounts and priorities of the liens on said fund.

From this decree the Ætna Insurance Company appealed.

The first question is as to the demurrer to the bill. Our statute provides : " For the recovery of any estate, real or personal, on which a writ of *fieri.facias* is a lien under this chapter, or on which the judgment on which such writ issues is a lien, or the.enforcement of .any liability in respect to any such estate, a suit may be maintained either at law or in equity, as the case may require, in the name of the officer to whom such writ was delivered. * * * But any person interested may bring such suit .at his own costs, and in the officer's name." Acts 1882, c. 127, s. 15; Code 1887, c. 141, s. 15. This statute plainly authorizes a suit of this character to be instituted or prosecuted in the name of a sheriff. The only question.is whether it should be at law or in equity. The well-settled general rule,.that equity has no jurisdiction,·where there is a plain . and adequate remedy at .law, does not of itself afford a sufficient test of the jurisdiction ; for it is also true, that a doubtful or partial remedy at law.does' not exclude an injured party from relief in equity ; and hence a just discrmination becomes frequently a subject of doubt and perplexity. The application of the principle to a particular case must depend altogether upon the character of the case as disclosed by the pleadings. It is safe to say however, that, where it is doubtful, whether or not there is: an adequate and complete remedy at law, a court of equity will take jurisdiction. 1 Bart. Chy. Pr. 65, 67; *Spotswood* v. *Higgenbotham*, 6 Munf. 313 ; *Swann* v. *Summers*, 19 W. Va. 115. Jurisdiction in equity is sustained where it will avoid a multiplicity of suits; and it has also been sustained, where there was a conflict between two execution-creditors. *Watson* v. *Sutherland*, 5 Wall. 78. It seems to me, that these authorities and others, which might be cited, fully sustain the jurisdiction of a court of equity in a suit such as the one at bar.

Here we have four execution-creditors claiming the same fund; a dispute about that fund,—Hanley, one of the garnishees, claiming that he owed the debtor nothing, until the fund was paid to him by the insurance company, and the insurance company, the other garnishee, claiming, that it owed neither the debtor nor Hanly ; and besides the fund was likely

to·be lost if it should be paid to the insolvent· debtor, and therefore it was proper to come into equity to enjoin such payment, and preserve the fund. The demurrer. to the bill was rightfully overruled.

It is contended by the· appellant, that there is no liability upon it because of the several trust-deeds executed by C. M. Moore on the land, upon which the insured property was located, and the decree ordering the sale of said land and placing it in the possession of a reciver. This contention is based upon that provision of the policy, which declares, that, "in case of any transfer or change of· title in the property insured by this company, or any undivided interest therein, or foreclosure of a mortgage thereon, such insurance shall be void and cease." This objection,· ·is fully answered by· the decision of this Court in *Quarrier* v. *Insurance Co.*, 10 W. Va. 507. In that case, on page 539, the· Court says: "If the deed of trust was executed after the policy, it did not violate the provisions of the policy; for it was not a sale of the property, or any change of the title, within the true· meaning of this provision. For it has often been ·decided that a mortgage or deed of trust, before its foreclosure,· is no alienation or ·change of title, according to the true interpretation of these words. when used in a policy of insurance.".

In the case at bar the proof is, that no sale of the insured property had been made ·at the time of the fire; and that Moore, the insured, was then residing .in it with his family.

The policy provides, that it shall not be assignable without the consent of the company expressed by· an indorsement made thereon. The policy in this instance was not assigned,· until after the loss had occurred, and the liability of the company had been fixed. An assignment subsequent to the loss is valid regardless of the conditions of the policy. Wood, Ins. § 94; *Franklin* v. *Insarance Co.*, 43 Mo. 491; May on Ins. 468. This is the law, supposing the assignment of the policy by Moore to Hanly to be· valid and binding; but it was not, because the·assignment was not only fraudulent but conditional, and the condition never was and· never will be performed.

It is further contended for the appellant, that there was no competent evidence of the loss of the furniture and effects or

of the value of the house destroyed. Soon after the loss occurred, the insured made out proofs of loss in the form required by the policy, stating therein each article destroyed by the fire, and its value. This was furnished to the company, and no objection was ever made to it, or any further proof required. It is admitted, that, while the proof of loss thus made out is admissible as *prima facie* evidence of the facts therein stated in favor of the company, it is not admissible as proof of such facts in favor of the insured. But there is other evidence in this case of the loss. C. M. Moore in his deposition says, that immediately after the loss he made proof thereof and files a copy thereof with his deposition, which he states to be a true account of the property lost, and its value. This is corroborated by the testimony of Gibbons, who assisted Moore to prepare said proof of loss. Other parts of the record show, that the value of the house was from $1,000.00 to $1,200.00, at the time it was destroyed by the fire. This, it seems to me, in the absence of any contradictory or rebutting testimony, is sufficient proof of the property lost and of its value.

It is further claimed, that the proof of loss was not certified by the magistrate or notary public living most contiguous to the place of loss, as provided for in the policy. As before stated, there was no objection by the company to the proof of loss or to the certificate attached thereto. In order to take advantage of a certificate of the notary public of this character, the company must seasonably object thereto specifically denominating the grounds of objection. Wood, Ins. § 417; *McMasters* v. *Insurance Co.*, 25 Wend. 379. Where a certificate was furnished, but not of the nearest magistrate, and no objection was made on that ground, it was held, that the insurer was estopped from proving, that the magistrate was not the nearest. *Taylor* v. *Insurance Co.*, 51 N. H. 50; Wood on Ins. § 416, p. 713, note.

Upon the whole record, I have been unable to discover any error to the prejudice of the appellant and am therefore of opinion to affirm the decree of the Circuit Court.

AFFIRMED.