# CHARLESTON.

PENINSULAR LAND TRANSPORTATION & MANUFACTURING CO. *v.* FRANKLIN INSURANCE CO.

Submitted September 4, 1891.—Decided November 28, 1891.

1. SPECIAL FINDINGS.

The purpose of the statute is to ascertain and separate one or more controlling facts, to the end that the existence or non-existence of some fact upon which the issue turns may be deliberately examined, patiently considered, and expressly found, so that a proper judgment may be rendered, according to the truth and the very right of the case.

2. SPECIAL FINDINGS.

Therefore all that tends to advance this remedy and accomplish the object for which it was designed should be encouraged and promoted.

3. SPECIAL FINDINGS.

But all methods of procedure that experience has shown have the contrary tendency—such as immaterial questions which lead to no result, obscure or ambiguous questions which only add another element of doubt, a profusion of questions, which only create distraction, and increase perplexity rather than remove them—all such should be ruled out with an unsparing hand.

4. SPECIAL FINDINGS.

Experience shows that the tendency is towards a multitude of questions, many of them not decisive of the issue, and those which are decisive put in all possible shapes, and repeated with all conceivable variations. Such methods of procedure increase the evil, rather than advance the remedy, and the trial court should exclude them, and prune them, and reduce them in number, unsparingly, in which the wide discretion given them by the statute should be steadily upheld. But such discretion is subject to review as in other cases.

5. SPECIAL FINDINGS.

It is proper not to permit an immaterial question to be propounded, and it is immaterial, unless an answer thereto, if contrary to the general verdict, would control the same, and be conclusive of the verdict. *Wheeling Bridge Co.* v. *Wheeling & B. Bridge Co.*, 34 W. Va. 155, (11 S. E. Rep 1009.)

6. SPECIAL FINDINGS.

The special findings, taken as a whole, must be clearly inconsistent with the general verdict, and, to be inconsistent, they must clearly exclude every conclusion that would authorize a verdict for the plaintiff.

7. SPECIAL FINDINGS.

At what time or stage of the trial such special questions may be submitted must be left largely to the discretion of the trial court, but they should not be submitted at such a stage as to work surprise, or be manifestly unfair to the other side.

8 INSURANCE.

If a party intends to ask the court to instruct the jury that the evidence is wholly insufficient, and to direct them to find a verdict accordingly, such instruction must be drawn with that end directly in view, and such ground must be explicitly stated.

9. INSURANCE.

The usual stipulations that the insured shall furnish certain preliminary proofs of loss, when loss has been sustained, are conditions precedent to the insurer's right to recover; but such conditions may be waived, or the insurer be estopped from setting them up.

10. INSURANCE.

And everything said or done by the insurer or by his proper agents upon which the insured may reasonably rely, which might fairly induce him to conclude that such proofs of loss have in his case been dispensed with or excused, and he is thereby influenced to act in good faith in accordance with such conduct, may amount to a waiver of such formal stipulation.

11. A case in which these rules are applied.

*A. J. Clark* and *W. P. Hubbard* for plaintiff in error, cited

11 Mo. 278; 18 Wis. 393; 29 Pa. St. 198; Flan. Ins. 518; 12 Wend. 452; 43 N. H. 621; 57 N. Y. 500; 13 N. J. L. 110; 3 Grant's Cas. 325; 80 Ia. 56; 8 Gray 33; 75 Pa. St. 380; 33 Pa. St. 402; 7 Jones L. 433; 24 N. E. Rep. 809, 810; 10 Allen 213; 6 T. R. 710; 8 Exch. 819; 28 L. J. Q. B. 260; 41 Pa. St. 64; 70 Ia. 704, 708; 128 Pa. St. 392, 395; 21 W. Va. 368; 11 S. E. Rep. 50; 57 Vt. 527; 22 N. E. Rep. 578; 52 N. Y. 504.

*H. M. Russell* for defendant in error, cited 12 Wheat. 408; Wood Ins. 45; 13 N. J. L. 110; 3 Grant. Cas. 325; 80 Ia. 56; 12 S. E. Rep. 771; 26 N. E. Rep. 1138; 70 Ia. 704; 100 N. Y. 417; 128 Pa. St. 392; 100 Ill. 644; 24 N. E. Rep. 808; 21 W. Va. 368; 11 S. E. Rep. 50; 43 N. J. L. 300; 77 N. Y. 483; 49 Wis. 389; 115 Pa. St. 407; 57 Vt. 527; 102 Pa. St. 281; 52 Hun 249; 90 Pa. St. 118; 13 S. W. Rep. 882; Id. 1016; 22 N. E. Rep. 578; 12 W. Va. 116; 136 U. S. 287; 49 Wis. 389; 32 W. Va. 283; 57 Vt. 527; 86 Va. 811; 11 S. E. Rep. 1009.

HOLT, JUDGE:

This is a suit brought in the Circuit Court of Ohio county on the 29th day of December, 1888, by the Peninsular Land Company, plaintiff below and appellee here, against the Franklin Insurance Company of Wheeling, defendant below and appellant, on a policy of fire insurance for five hundred dollars from 3d April, 1888, at 12 o'clock at noon, to 3d April, 1889, at 12 o'clock noon. The declaration is in the short form given in section 61, c. 125, of the Code. The policy is referred to as filed therewith. Under section 64 of same chapter defendant filed a plea, saying that "said defendant is not liable to the plaintiff as in said declaration alleged," and filed therewith a specification of grounds of defence. Plaintiff filed a reply, joining issue with a statement of matters relied on in waiver, estoppel, and avoidance of defendant's statement of defences; a jury was elected and sworn; the evidence heard; various instructions given and refused; a motion by defendant that the jury should be required to answer in writing eight several questions of fact specially; motion overruled; verdict found for plain-

tiff; motion for new trial made and overruled; exceptions taken; judgment rendered; and the case brought here on a writ of error.

We find it convenient to consider first the eight questions asked by defendant to be submitted to the jury under section 5, c. 131 of the Code. The court refused to submit these questions to the jury: "Questions by defendant for special finding: (1) Was notice of the loss given by assured forthwith? (2) Was due diligence exercised by the assured in giving notice of the loss? (3) Was there any reason for the assured delaying fifteen days in notifying the plaintiff of the loss? (4) If any such reason existed, what was it? (5) Was a particular account of the loss rendered within thirty days thereafter? (6) Was a particular account of the loss rendered within a reasonable time thereafter? (7) Was there any reason for the assured delaying until June 27 to render the particular account required by the policy? (8) If any such reason existed, what was it?" But few cases have reached this Court involving this subject. See *Kerr* v. *Lunsford*, 31 W. Va. 659, 648, (8 S. E. Rep. 493) our first case; also, *Wheeling Bridge Co.* v. *Wheeling & B. Bridge Co.*, 34 W. Va. 155,)11 S. E. Rep. 1009,) and opinion of LUCAS, J.; also *Bess* v. *Railroad Co.*, 14 S. E. Rep. 234 (at this term) and opinion of BRANNON, J.—as to the purpose and reason of the law. The statute provides that "where any such separate verdict or special finding shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly." The question is, did the court err in refusing defendant's request to submit these eight questions? This practice has its advantages, no doubt, but it is easy to foresee the abuses to which it may gradually lead; hence this warning is given early, not with reference to the questions in this particular case, but to help guard ourselves from gradually gliding into some abuses which are now inducing other courts to limit, rather than improperly extend, the practice of propounding so many interrogatories to the jury. "It is an abuse fraught with evil, for it tends to bewilder the jury, rather than to aid them." It does not apply to criminal cases. If the question is objectionable in

form or substance, objection must be made when it is requested to be given. If the jury agree on a general verdict, they must answer the questions fully, without evasion, so far as the evidence enables them to do so." Inasmuch as they control the general verdict, and, when inconsistent therewith, the judgment of the court must be based upon them, the importance of submitting proper questions becomes apparent; for, if the questions are immaterial—that is, not decisive of the issue—the answers will be so also if responsive, so that it will be the duty of the court in that event to render judgment on the general verdict. The special findings, taken as a whole, must be consistent with the general verdict, or the fact found in any one one or more of the answers must clearly exclude every reasonable conclusion that will authorize a recovery by the plaintiff. Such antagonism to the general verdict must be such as to exclude every ground of recovery that there is any evidence even tending to prove; for, if there be such evidence, it justifies the general finding, and a demurrer to evidence or exclusion of evidence for insufficiency or direction to find against plaintiff for such cause withdraws the interrogatories necessarily. If the special finding can be reconciled with the general verdict, and made consistent therewith by any fact which the evidence fairly tends to prove, the general verdict must prevail. Inconsistent findings, such as can not stand together, destroy each other; and the court must disregard the antagonistic parts. In doubtful cases the court will so interpret the special findings as to support, rather than overturn, the general verdict; for unless, without any inference or presumption in their favor, the special findings are invincibly antagonistic to the general verdict, the latter must prevail. The special findings are considered and construed as a whole. Those not material may generally be disregarded; but one can not be singled out to overthrow the general verdict, if, when taken with the others, it is consistent therewith. If no motion is made for judgment on the special findings, judgment, as of course, is rendered on the general verdict. Upon motion for judgment no question is entertained as to their inconsistency with the evidence, nor is the evidence considered,

but only the pleadings, special findings, and general verdict; but there may be motion for a new trial upon the ground, among others, that such special findings are wholly unwarranted by the evidence. If the special findings do not, in effect, cover all the issues expressly or impliedly made, so that the general verdict could not have been rendered without an investigation of the facts embraced by the interrogatories, and such special findings are not inconsistent with those issues or those parts of the issue not covered by them, still the party is not entitled to judgment, though such special findings be inconsistent with the general verdict as to the issues, or that part of the issue covered by them. For the reason, as already stated, that such special findings do not exclude every conclusion that will' authorize a recovery for the plaintiff, our statute uses the words "may," *etc.*, "direct the jury," *etc.* Still it adds: "The action of the court upon such motion shall be subject to review, as in other cases." Our statute is silent as to when the requests shall be made, but the trial court must have some discretion in this matter, but would hardly submit them at a stage so unseasonable as to be manifestly unfair to the other side. ' See *Duesterberg* v. *State*, 116 Ind. 144 (17 N. E. Rep. 624.) Very many of these points have some bearing, direct, or indirect, on the question now presented; and for the substance of the above epitome I am indebted for the most part to Judge Thompson's valuable work on Trials, where he has brought within a small compass the rules and governing principles gathered from a wide range of rulings by courts long familiar with the practice. See Thomp. Trials, c. 77, and cases cited.

The eight questions here rejected fall into two classes— one relating to the alleged failure of the insured to give defendant a proper and timely notice of the loss; the other relating to its failure to render to defendant within the time fixed by the contract, or, if in excess of that, within a time appearing under the circumstances to be reasonable, the particular account of loss required by the terms of the policy; and we must suppose a favorable answer given to each question, as far as there is any evidence tending to justify such favorable answer, and then, taking

such answers as an entirety, discarding such, if any, as antagonize and destroy each other, see if such findings would be irreconcilably antagonistic to a general verdict for the plaintiff. If so, they were improperly refused; if not, then they were properly rejected as not inconsistent, but immaterial; and the questions which educed these favorable supposed findings, properly rejected. It is intended, no doubt, by the use of the word "may" that the court shall have some discretion as to some matters that may arise; yet upon the vital question of submission or non-submission its action must, in the language of our statute, "be subject to review."

The supposed favorable special findings would be as follows. We have divided the questions into two groups of four questions each:

First four. "Notice of loss was not given by the assured forthwith, nor was due diligence exercised by the assured in giving notice of the loss. There was no reason for the assured delaying fifteen days in notifying the defendant of the loss; no such reason existed." But may not the general verdict say the giving of any notice or a more timely notice was waived by defendant, if there was any evidence tending to show such waiver, and thus render such special finding immaterial? But plaintiff, in the statement of grounds of reply accompanying its general replication, does not specify in terms a waiver of such notice of loss. See Code, c. 125, ss. 65, 66.

Second four. Rejected questions answered favorably. "A particular account of the loss was not rendered within thirty days thereafter, nor was a particular account of the loss rendered within a reasonable time thereafter; and there was no reason for the assured delaying until 27th June, 1888, to render the particular account required by the policy; none such existed." As to this plaintiff specially replies, and relies upon waiver. And if there is any evidence tending to show such waiver, and it is permissible to show it under this policy, then it is comprehended in the general verdict; and such special finding is not inconsistent therewith, because immaterial, or, in other words, is to be treated as, although confessed or found, nevertheless thus

met and avoided. Thus is the question involved reduced, as to the last four, to the question, was there any tendency of any evidence, reasonably and fairly considered, to show such waiver, and could the same be shown under this policy ? " It was early held with special reference to contracts of marine insurance that the *strictum jus* or *apex juris* is not to be laid hold of, but they are to be construed largely for the benefit of trade and for the insured—a rule which, under different forms of expression, has obtained with reference to all kinds of insurance to the present day. Having indemnity for its object, the contract is to be liberally construed to that end, and it is presumably the intention of the insurer that the insured shall understand that in case of loss he is to be protected to the full extent which any fair interpretation will give." 1 May, Ins. § 174.

Notice of loss. This belongs to that class of stipulations relating to a matter arising after the capital fact of loss within the range of defendant's liability according to its contract has become fixed, termed a "formal" requirement as distinguished from a "substantive" requirement, one looked to in fixing the loss; and, as to formal requirements, such as notice of loss, the courts lean strongly against depriving the insured of the insurer's liability by reason of any failure or neglect to comply with the mere formal requirements of the contract, and sometimes seemingly resort to quite slender and far-fetched inferences of waiver or estoppel for that purpose. And the same doctrine, and for the same reason, is applied to the question of proof of loss, or the rendering of a particular account of loss, as it is termed in this policy. Still the main principles of interpretation applied to contracts in general are applied to contracts of insurance, notwithstanding that, owing to the exceptional nature of the subject-matter and the peculiar relation of the parties and the public concernment, certain parts are sometimes held void as against public policy; the doctrine of waiver and equitable estoppel, based upon human nature, common sense, and common justice, applied to other parts; the rules of evidence and laws of agency so stated and applied as to be in appearance, if not in reality, strikingly exceptional. Therefore

the terms of the contract must be looked to, to see what is made a *sine qua non* condition to recovery, or what shall work a forfeiture. In this case we are not called on to consider the effect of these as to notice of loss, for on turning to the policy we find the ninth requirement reads, "Persons sustaining loss or damage by fire shall forthwith give notice of said loss to the secretary of the company;" but I nowhere see that this shall be done on pain of forfeiture; and, "if a policy does not expressly make such failure a cause of forfeiture, it will not be so held." 2 May, Ins. (3d Ed.) § 461; *Insurance Co.* v. *Evans*, 102 Pa. St. 281; *Insurance Co.* v. *Downs* (Ky) 13 S. W. Rep. 882. "Forthwith" means as soon as it can reasonably be done under the circumstances of the particular case (2 May, Ins. § 462, and note 7); "with due diligence, under the circumstances of the case, and without unnecessary and unreasonable delay, of which the jury are ordinarily to be the judges." "But where the facts and circumstances bearing upon the question of due diligence are not in dispute, it may become a question of law for the court, as in this case, by the manner in which the question arises." Where no other party is interested, the assured is the proper person to give notice; but notice from the real party in interest, "such as the mortgagee in this cause," would be sufficient. Id. § 463. in this case there is evidence tending to show that timely notice or knowledge of the loss was communicated by Mr. Paul, the insurance agent who procured for plaintiff the policy; to Mr. Adams, secretary of the defendant company, for he not only received the oral notice of loss communicated to him by Mr. Paul, but acted upon it at once by directing the policy sent to Boston, to be held, if not already delivered. See *Edwards* v. *Insurance Co.*, 20 Fed. Rep. 661 (N. Y. 1884) cited in note to section 464, 2 May, Ins. (3 Ed.). So that there was evidence on behalf of plaintiff tending to repel the defendant's charge of want of notice of loss, and therefore the trial court properly ruled out the first four questions, because the most favorable answers would have been for this purpose fatally antagonized, and overcome by facts admissible in evidence under the issue, and which there was evidence tending to prove; and therefore no

judgment could have been given on such special finding.

Second group of four questions. These relate to preliminary proof of loss, the rendering of a particular account of loss. The rendering of particular account of loss is, as we have already seen, one of the formal requirements, as distinguished from those that precede the loss. On this point, May on Insurance (volume 2, § 465) says : "No doubt the usual stipulation that the insured shall furnish certain preliminary proofs of loss, when loss has been sustained, are conditions precedent, without compliance with which no recovery for loss can be had. But, in conformity to the general rule applicable to conditions precedent, a failure to comply with which works a forfeiture, they will be construed strictly against the insurers, for whose benefit they are imposed, and liberally in favor of the insured, upon whom they impose burdens more or less onerous." The fire occurred 9th April, 1888, at 8 o'clock A. M. The policy sued on was issued on 12th April, 1888. On 9th April, at 2 o'clock P. M., it was dated back to cover loss from 3d of April, 1888—insurance $500 ; loss, total ; proportional part of loss more than $500 ; good faith of insured admitted. On 12th April Mr. Paul told the secretary of defendant company that the hotel was burned, as informed by a notice received by him ; and the two telegraphed to Boston a recall of the policy, but it seems to have been too late, the policy having been delivered. On 6th July, 1888, the secretary of the defendant company wrote to the president of the plaintiff company—the insurer to the insured—saying : "The Franklin Insurance Company of this place can not recognize its liability under its policy for your claims ;" and proceeds to set out the grounds : (1) No satisfactory explanation had been given of the peculiar circumstances under which the policy had been dated back, and the fire occurring during the period thus taken into the policy. Then various other reasons—the failure to furnish particular account of loss within the thirty days being among them ; and the letter was written after the expiration of the thirty days. See *Sheppard* v. *Insurance Co.*, 21 W. Va. 368, 383 ; *Deitz* v. *Insurance Co.*, 33 W. Va. 526, 544 (11 S. E. Rep. 50.) See, also *Nease* v. *Insurance Co.*, 32 W. Va. 283

(9 S. E. Rep. 233) and *McFarland* v. *Insurance Co.*, 6 W. Va. 425. "A waiver is an intentional relinquishment of a known right, or such conduct as warrants an inference of waiver of such right; but where it appears that there was no such intent in fact, and no understanding on the part of the insured that the proofs were waived, so that he was not misled, it will be held that there has been no waiver." *Findeisen* v. *Insurance Co.*, 57 Vt. 520. "The understanding of one party (of waiver) without sufficient cause given by the other is not enough." *Hambleton* v. *Insurance Co.*, 6 Biss. 91–95. / "If the insurance company refuse to pay the loss, or deny its liability, upon independent grounds, before any sufficient proof of loss is made, and before the time within which such proofs are to be made by the terms of the policy, such denial and refusal constitute a waiver of the condition of the policy requiring such proof." *Deitz* v. *Insurance Co.*, 33 W. Va. 526 (11 S. E. Rep. 50); *Sheppard* v. *Insurance Co.*, 21 W. Va. 368. I confess I have looked this record through in vain to find any waiver, or any evidence fairly tending to show waiver, on the part of defendant, of proof of loss. That requirement was constantly relied on in all the letters of defendant to plaintiff, together with other grounds, why payment should not be made, nor did plaintiff attempt to send any proof of loss until 27th June, 1888—seventy eight days after the expiration of the thirty days. The first letter of defendant to plaintiff is dated 6th July, 1888, and in it a formal statement of this ground, among others, is given, why defendant was not liable to pay. I can find nothing before that, nothing since, tending in the slightest degree to show waiver or estoppel on this point, or anything in its conduct or in the conduct of its agents tending to warrant plaintiff in drawing any such inference. I can see nothing in the policy authorizing that he shall be paid, except the provision which says: "Plaintiff shall be paid sixty days after proofs made and received in accordance with the terms and provisions of the policy hereinafter mentioned." As to the amended proof of loss sent to the insurer, but not sent back for amendment, nor the letter even answered, it was not sent until the expiration of nearly three months after

the expiration of the thirty days. ·Why might not defendant remain silent without implied waiver, especially when it had already formally insisted on non-liability by reason of failure of plaintiff to render the particular account of loss contracted for? See *Insurance Co.* v. *Gould*, 80 Ill. 388.

I come now to the instructions. Plaintiff's No. 1 was withdrawn, or not requested, and therefore does not appear. Defendant's No. 1, relating to payment of premium, was given without objection, and therefore need not be given. The court gave the following five instructions for plaintiff, over defendant's objection, numbered 2, 3, 4, 5, and 6, and refused to give defendant's ten instructions, numbered 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11, to which defendant excepted.

Instructions given for plaintiff: "(2) The failure to furnish proofs of loss under the policy within thirty days after the fire does not, under all circumstances, and at all events, constitute a bar to the plaintiff's recovery. The defendant, for whose benefit the provision is made, may waive a compliance with it; and, even in the absence of a waiver, a delay for more than thirty days in furnishing the proofs will not be conclusive against the plaintiff's case unless it appears that the defendant has in some way been prejudiced by the delay. (3) The provision in the policy which has been introduced in evidence, requiring persons who have sustained loss by fire to give· notice forthwith to the secretary of the defendant, is not to be construed as requiring that such notice should be absolutely immediate, but only as requiring that it should be given within a reasonable time, under the circumstances of the case. (4) The forthwith notice required by the policy to be given by persons sustaining loss may be given by the assured through an agent, and need not be given by him in person. (5) Under the provisions of the policy which has been introduced in evidence it is not necessary that the plaintiff, in making out its case, should furnish evidence of an award of arbitrators, in the absence of any showing that a submission to arbitrators was requested by either party, and in the absence of any showing that an award was in fact made. (6) If the jury believe from the evidence that the policy which

has been introduced in evidence was issued by the defendant on the 3d day of April, 1888, and was then written so as to cover the period from the 12th day of April, 1888, to the 12th day of April, 1889; and if they further believe that on the 6th day of April, 1888, Alfred Paul, at the request of the agent of the assured, notified the defendant company that it was desired to have the dates in the policy changed so as to cover a period of one year, beginning on the 3d day of April, 1888, and that, upon receiving such notice, the defendant made no objection to the proposed change; and if they further believe that on the 9th day of April, 1888, the change was made as proposed, all parties being in ignorance that the fire had occurred; and if they further believe that the said policy was delivered to the agent of the assured, and that the defendant company received and retained the premium therefor—then the fact that the property had burned at the time when such change was made will not prevent a recovery in this action by the plaintiff."

The following ten instructions, offered by defendant, were refused by the court, to which refusal defendant excepted: " (2) The jury is instructed that under the policy sued on nothing is due the plaintiff until sixty days after due notice and proofs of loss are made by the assured and received at the defendant's office in accordance with the terms and provisions of the policy, among which is a provision that the particular account required by the policy as part of such proofs shall be rendered within thirty days after the fire. (3) The plaintiff, not having shown that the particular account mentioned in instruction numbered 2 was rendered within thirty days after the fire, is not entitled to recover in this action. (4) Under the policy sued on nothing is due the plaintiff until sixty days after due notice and proofs of loss are made by the assured and received at the defendant's office, and it is necessary that the particular account required by the policy as a part of such proofs should be rendered within a reasonable time after the fire. No reason for delay appearing in the evidence, and such particular account not having been rendered within a reasonable time, the plaintiff can not recover in

this case.   (5) Under the policy sued on nothing is due the plaintiff until sixty days after due notice and proofs of loss are made by the assured and received at the defendant's office, and it is necessary that the particular account required by the policy as part of such proofs should be rendered within a reasonable time after the fire.   Therefore, if the jury believe from the evidence that such particular account was not rendered within a reasonable time after the fire, they must find for the defendant; and the jury can not arbitrarily say that the delay in rendering such account was reasonable, and can not so find unless there be shown in the evidence some substantial reason why the particular account was not rendered within the time fixed by the policy.   (6) If the jury believe from the evidence that the plaintiff did not render to the secretary of defendant company a particular statement of the loss within thirty days thereafter, that then the plaintiff is not entitled to recover in this action, unless they further find that the defendant waived this requirement of the policy ; and the court instructs the jury that defendant's letters of July 6, 1888, to St. Clair-Abrams, and of September 26, 1888, to William. H. Brewster, are not waivers of such requirement. ( 7 ) The plaintiff can not maintain this action unless before it was brought the proofs of loss required by the policy were rendered.  The policy requires that such proofs shall give copies of the written portions of all policies on the insured property.   Proofs furnished by the plaintiff did not give such copies, and were objected to for that reason.   That defect not having been remedied by the plaintiff, it can not recover in this action.   (8) The requirement of the policy that notice of loss shall be given must be complied with before an action can be maintained on the policy.   Such notice is required to be given by the assured, and information of the loss given to the defendant from third person is not a compliance with the requirement of the policy.   (9) The plaintiff can not maintain this action unless before it was brought the certificate under the hand and seal of a magistrate or notary public, required by the policy, was produced.   The proofs of loss not having contained such certificate, and having been ob-

jected to for that reason, and that defect not having been remedied, the plaintiff can not recover in this action. (10) The requirements of the policy with respect to giving notice and rendering proofs of loss are matters of substance, and of the essence of the contract, and must be complied with before the suit can be maintained on the policy. The jury have nothing to do with the question whether the defendant is harmed by the failure of the plaintiff to comply with these requirements, and should disregard the suggestion that the defendant has not been harmed by such failure. (11) Under the policy sued on nothing is due the plaintiff until sixty days after due notice and proofs of loss are made by the assured and received at the defendant's ·office in accordance with the terms and provisions of the policy, and it is necessary that the certificate under the hand and seal of a magistrate or notary·public required by the policy as part of such proofs should be rendered within a reasonable time after the fire. Therefore, if the jury believe from the evidence that such certificate was not rendered within a reasonable time after the fire, they must find for the defendant. And in determining what is a reasonable time for the filing of such certificate the jury must be governed by the evidence in the case, and, unless they find something in such evidence justifying the delay in producing such certificate, they must find for the defendant."

I am of opinion that the five instructions requested by plaintiff and given by the court, taken as a whole, and with reference to the evidence in the case, propound the law with sufficient practical accuracy. The first one, I think, would have been better if it had closed as follows: "Unless it appears that plaintiff has unreasonably delayed furnishing such proof of loss, or that the defendant has in some way been prejudiced by the delay." Among the ten instructions requested by defendant and refused by the court, I am of opinion that No. 6 is good, and should have been given. The first part is good, because it contains the important qualification, "Unless they further find that the defendant waived this requirement of the policy." The latter part is good, because the point of law ruling the question involved springs out of the facts given, and in

such case it is the duty of the court to declare the law. The letters admitted as having been sent and received fix the facts. These two letters, taken singly or together, do not constitute a waiver, for the plain reason that the secretary of defendant—the proper one—disavows liability on the policy on a ground not related to the want of proof of loss; yet, in the same breath, he does give the failure of the insured to render the particular account of the loss as required by the policy as another reason relied on for non-liability; thus explicitly and formally forestalling any inference that might be drawn if the first and unrelated reason had been left to stand alone. Moreover, these two letters were written eighty days, or thereabout, after the thirty days given to render proof of loss had run out; and, inasmuch as this instruction No. 6 is made good by putting in the qualification about waiver, the others are made bad by leaving it out. And the court, in refusing these nine instructions, in our view, is justified, for several reasons demanded by the rules of due and orderly procedure. The court had given plaintiff's instruction No. 2; and, on so vital a matter as instructing the jury to find *pro* or *con*, by reason of the court's opinion that evidence on an element of liability necessary to justify a recovery is wholly wanting, if the court does not see fit to do so of its own motion, then it must be asked to so instruct or so direct, not by uncertain implications, but straight out, and in plain language, so that in so important a matter the court may not be taken unawares. The request of defendant for a special finding in answer to questions Nos. 5, 6, 7, and 8 should have been granted, and defendant's instruction No. 6 should have been given; and, this not having been done, defendant's exception thereto was well taken.

The judgment complained of is therefore reversed, the verdict set aside, a new trial awarded, and the case remanded.

REVERSED. REMANDED.